# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER MARIE TUCKER,<br><br>Plaintiff,<br><br>v.<br><br>AMCO INSURANCE COMPANY,<br><br>Defendant.<br>_____/ | Case No. 1:17-cv-01761-DAD-SKO<br><br>**ORDER ON PLAINTIFF'S MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**<br><br>(Doc. 13) |

## I. INTRODUCTION

Plaintiff Jennifer Marie Tucker ("Plaintiff"), filed this action in Fresno County Superior Court on November 17, 2017, and Defendant AMCO Insurance Company ("Defendant") removed the case to federal court, based on diversity jurisdiction, on December 28, 2017. (Doc. 1.) In her complaint, Plaintiff alleges breach of contract and breach of the implied covenant of good faith and fair dealing stemming from Defendant's denial of Plaintiff's insurance claim. (Doc. 1-2 at 17–20.) According to Plaintiff, she is an "additional insured" under her deceased father's insurance policy and Defendant has improperly refused to pay any benefits related to the 2015 theft of tools previously owned by her father. (*Id.* at 6–7, 16–17.)

On October 9, 2018, Plaintiff filed the instant motion to compel responses to three interrogatories. (Doc. 13.) On October 31, 2018, the parties filed a "Joint Statement of Discovery Disagreement Re Plaintiff's Special Interrogatories, Set Two" ("Joint Statement" or "Jnt. Stmt")

pursuant to Rule 251(c) of the Local Rules for the United States District Court for the Eastern District of California ("Local Rules"). (Doc. 18.) On November 2, 2018, having reviewed the parties' Joint Statement, the Court determined the matter was suitable for decision without oral argument. Accordingly, pursuant to Local Rule 230(g), the Court vacated the motion hearing and indicated a written order would follow. For the reasons set forth below, Court DEFERS RULING IN PART and GRANTS IN PART Plaintiff's motion.

## II. DISCUSSION

### A. Legal Standard

Interrogatories may relate to any matter that may be inquired into under Rule 26(b) of the Federal Rules of Civil Procedure ("Rules"), and an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. Fed. R. Civ. P. 33(a)(2) (quotation marks omitted). Parties are obligated to respond to interrogatories to the fullest extent possible under oath, and any objections must be stated with specificity. Fed. R. Civ. P. 33(b)(3), (4). A responding party "is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Gorrell v. Sneath*, 292 F.R.D. 629, 632 (E.D. Cal. 2013).

"If the party requesting discovery is dissatisfied with any of the responses, the party may move to compel further responses by informing the court which discovery requests are the subject of the motion to compel, and, for each disputed response, inform the court why the information sought is relevant and why the opposing party's objections are not justified." *United States v. Baisden*, 881 F. Supp. 2d 1203, 1205 (E.D. Cal. 2012) (internal quotations and alterations omitted). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 2012 WL 5519199, at *3 (N.D. Cal. 2012). "[T]he party opposing discovery [then] has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id.* (citing *DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). The party opposing discovery is "required to carry a heavy burden of showing" why discovery should be denied. *Blankenship v. Hearst Corp.*, 519

2

F.2d 418, 429 (9th Cir. 1975).

**B.     Subject Interrogatories**

Interrogatory 11: "Identify by date of the loss, date of retention, and claim number, each and every claim involving a property loss sustained by a policyholder, that occurred on or after January 1, 2014 to the present, in which AMCO INSURANCE COMPANY has retained Kevin Hansen to provide assistance to AMCO INSURANCE COMPANY in connection with the handling of a claim."

Defendant's Response to Interrogatory 11: "AMCO objects to this interrogatory on the grounds that it is overbroad, oppressive, unduly burdensome, and vague and ambiguous. AMCO also objects to this interrogatory to the extent it seeks confidential information or information subject to privacy protection, including pursuant to California Insurance Code Section 791.13. AMCO further objects to this interrogatory on the ground that it seeks information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Additionally AMCO objects to this interrogatory to the extent it seeks information protected by the attorney client privilege, the attorney work product doctrine, or any other judicially recognized privileged protection."

Interrogatory 12: "Identify by date of the loss, date of retention, and claim number, each and every claim involving a property loss sustained by a policyholder, that occurred on or after January 1, 2014 to the present, in which AMCO INSURANCE COMPANY has retained Kevin Hansen to perform an examination under oath connection with AMCO INSURANCE COMPANY's the handling of a claim."

Defendant's Response to Interrogatory 12: [Identical to the response to Interrogatory 11.]

Interrogatory 13: "Please state the total amount each month AMCO INSURANCE COMPANY has paid for legal services to the law firm McCormick Barstow LLP, since January 1, 2014 to the present."

Defendant's Response to Interrogatory 13: [Identical to the response to Interrogatory 11.]

In sum, Interrogatory 11 requests the 1) date of loss, 2) date of retention, and 3) claim number, for every property loss claim since January 1, 2014, which Defendant retained Mr. Kevin Hansen, Esq. to assist with handling the claim. Interrogatory 12 requests the same three facts for the same type of claims, but only claims where Defendant retained Mr. Hansen to perform an examination under oath. Interrogatory 13 seeks the monthly amount paid to Mr. Hansen's law firm for legal services since January 1, 2014, which is the year before the alleged loss of Plaintiff's father's tools in May 2015.

Defendant objects to these interrogatories on five grounds: 1) they seek information which is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, 2) they are oppressive and unduly burdensome, 3) they are overbroad, vague, and ambiguous, 4) they seek information protected by the attorney client privilege, and 5) they seek information subject to privacy protections under to California law including California Insurance Code section 791.13.

**C.     Analysis**

  **1.   Relevance**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* Evidence is relevant if, "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401.

"District courts have broad discretion in determining relevancy for discovery purposes." *United States v. Baisden*, 881 F. Supp. 2d 1203, 1205 (E.D. Cal. 2012) (citing *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). Relevancy is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, (1978); *see also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1031 (E.D. Cal. 2010) ("[D]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action.").

In this case, Defendant asserts good faith reliance on the advice of counsel, Mr. Kevin Hansen, Esq., as a defense to Plaintiff's insurance bad faith and punitive damages claims. By asserting the reliance on counsel defense, Defendant has put at issue whether its retention and reliance on Mr. Hansen's advice was reasonable. *Medina v. Harco Nat'l Ins. Co.*, No. CV 15–05595–BRO (MRWx), 2016 WL 7647680, at *2 n.3 (C.D. Cal. July 29, 2016) (overruling the defendant insurer's relevancy objection and finding the defendant's counsel's experience was "relevant to whether Defendant reasonably relied on counsel's advice" (citing *State Farm Mut.*

*Auto. Ins. Co. v. Superior Court*, 228 Cal. App. 3d 721, 725 (1991)). Accordingly, to the extent the three interrogatories seek facts that may bear on whether Defendant's reliance on Mr. Hansen's advice was reasonable, the evidence would be relevant.

### i. *Interrogatories 11 and 12*

The facts Plaintiff seek in Interrogatories 11 and 12—the date of loss, date of retention of Mr. Hansen, and claim number of certain property loss claims—are relevant to the reasonableness of Defendant's reliance on Mr. Hansen's advice because these facts help establish the scope and extent of the relationship between Mr. Hansen and Defendant. Thus, the interrogatories may help demonstrate whether Defendant retained Mr. Hansen in good faith or because it knew Mr. Hansen was predisposed to handle claims in favor of Defendant and against insureds. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998 (9th Cir. 2004) (acknowledging that when an insurer uses the same expert on a continual basis, the expert may become bias because they lose their independence); *Eastman v. Allstate Ins. Co.*, No. 3:14–CV–00703–WQH–WVG, 2015 WL 4393287, at *9 (S.D. Cal. July 15, 2015) ("[T]he extent to which Bausley depends upon Allstate's business and thus goodwill may raise legitimate doubts about his objectivity[.]"); *see also Smith v. Allstate Ins. Co.*, 52 Fed. Appx. 349, 351 (9th Cir. 2002) (finding the district court abused its discretion by excluding evidence not directly related to the plaintiff's claim and holding: "Evidence not directly related to Smith's particular claim is still relevant and admissible provided that it tends to establish Allstate's 'pattern of unfair practices'"). Additionally, Defendant asserts that it declined coverage for Plaintiff's insurance claim based in part on Mr. Hansen's report that Plaintiff failed to appear for an examination under oath (Jnt. Stmt 12), and Interrogatory 12 seeks to establish whether hiring Mr. Hansen to perform such an examination was a regular practice of Defendant.

Defendant makes two arguments regarding why the responses to Interrogatories 11 and 12 are not relevant. First, Defendant contends the information is not relevant because Plaintiff seeks information involving different insurance claims "which necessarily involve different facts, different issues, different advice, and different coverage determinations[.]" (Jnt. Stmt 11.) Defendant principally relies on the Southern District of California's decision in *Dobro v. Allstate Ins. Co.*, No. 16cv1197-AJB (BLM), 2016 WL 4595149 (S.D. Cal. Sept. 2, 2016). In *Dobro*, the

5

Court held information relating to other insurance claims was relevant to the plaintiff's bad faith insurance claim, but only to the extent the claims were similar based on six criteria that limited the date, location, and specific type of claim. *Id.* at *6. Here, while Interrogatories 11 and 12 are not limited to same extent as the interrogatories in *Dobro*, Plaintiff has limited the interrogatories to only claims for property losses in the one year prior to the property loss in the instant case. Other courts have found that similar limitations adequately limit the responsive claims such that only relevant information is provided. *See e.g.*, *Van Duyn v. Am. Sec. Ins. Co.*, No. CV 08-5748-GW(CTX), 2009 WL 10672575, at *3 (C.D. Cal. Apr. 14, 2009) (overruling the defendant's relevancy objection to an interrogatory seeking certain claim information "involving a first party homeowners property damage" and holding the plaintiff "established that discovery relating to the non-party insureds is relevant to her claims in this action, insofar as the requests seek information pertaining to similarly situated insureds."); *see also J & M Assocs., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 06-CV-0903-W (JMA), 2008 WL 638137, at *5 (S.D. Cal. Mar. 4, 2008) ("[D]iscovery regarding other claims handled by National Union is relevant to J & M's claims in this action, insofar as the requests seek information pertaining to the same type of policy at issue in this case[.]"). Accordingly, for purposes of Defendant's relevancy objection, the Court finds that Plaintiff has adequately limited the scope of Interrogatories 11 and 12 to information relating to similar claims.

Second, Defendant contends Interrogatories 11 and 12 seek irrelevant information because expert bias cannot be based solely on the number of times an expert has been retained by an insurer. (Jnt. Stmt at 13.) Defendant principally relies on *Worth Bargain Outlet v. AMCO Ins. Co.*, No. 09CV839 DMS (WMc), 2010 WL 2898264, at *11 (S.D. Cal. July 21, 2010). In *Worth Bargain*, the court determined that it would be unreasonable to conclude an expert was biased simply based on the number of times the expert was retained by the defendant. 2010 WL 2898264, at *11. However, the court reached this conclusion for purposes of a motion for summary a judgment, which is an entirely different standard than whether evidence is relevant for purposes of discovery. While *Worth Bargain* may support Defendant's contention that the extent of its relationship with Mr. Hansen cannot prove Mr. Hansen's bias without other evidence, the Court will not speculate

regarding what other evidence Plaintiff may offer in support of its claim that Defendant acted in bad faith in hiring Mr. Hansen. The dispute before this Court is whether the extent of Mr. Hansen's relationship with Defendant is relevant to Plaintiff's insurance bad faith and punitive damages claims, and *Worth Bargain* offers no support to suggest it is not relevant. To be sure, information relating to the claim number, date of retention, and date of property loss for certain claims handled by Mr. Hansen may not in and of itself prove Defendant acted improperly in hiring Mr. Hansen, but this evidence may be sufficient if offered in conjunction with other evidence. Thus, it would be premature for this Court to deny the relevance of this evidence while speculating that Plaintiff will not be able to offer any corroborating evidence.

Plaintiff also attempts to distinguish the Ninth Circuit's decision in *Hangarter v. Provident Life & Acc. Ins. Co.*, on which Plaintiff relies to support its position that the nature and extent of Defendant's relationship with Mr. Hansen is relevant to her bad faith insurance claim. In *Hangarter*, the Ninth Circuit held that evidence showing that the same expert rejected the insureds' claims of total disability thirteen out of thirteen times, along with other evidence, constituted substantial evidence that the defendant insurer engaged in a bad faith investigation of insureds' claims. 373 F.3d at 1011. Defendant contends *Hangarter* is distinguishable because Plaintiff has "advanced no evidence to support any argument that AMCO retained Attorney Hansen because he was predisposed to render advice to deny insurance claims." (Jnt. Stmt 14.) However, the court in *Hangarter* acknowledged when an insurer continually uses the same expert, the expert may become biased. 373 F.3d at 1011. While the plaintiff in *Hangarton* offered evidence showing how many times the expert agreed with the defendant as well as additional evidence to support its claim, the additional evidence does not change the relevance of the facts regarding the relationship between the expert and the insurer. Thus, regardless of what other evidence Plaintiff may ultimately offer in support of her case, the nature and extent of Defendant's relationship with Mr. Hansen is relevant to the reasonableness of Defendant's reliance on Mr. Hansen's advice.

In sum, the scope of relevancy during discovery is broad, and regardless of whether the evidence is admissible at trial, the nature and extent of Defendant's relationship with Mr. Hansen could, at a minimum, lead to other evidence or be offered in conjunction with other evidence, to

7

demonstrate whether Defendant's reliance on Mr. Hansen's advice was reasonable. Accordingly, the Court OVERRULES Defendant's relevancy objections to Interrogatories 11 and 12.

### ii. *Interrogatory 13*

"Evidence regarding the amount of compensation paid to an insurer's reviewers may be considered as evidence of the insurer's bias or conflicted decision making." *Kreeger v. Life Ins. Co. of N. Am.*, No. CV 09–8262–GAF(OPx), 2010 WL 11549536, at *2 (C.D. Cal. July 14, 2010) (citing *Nolan v. Heald College*, 551 F.3d 1148, 1155 (9th Cir. 2009)); *see also Eastman*, 2015 WL 4393287, at *9 ("If Bausley's business relied on Allstate for only 2% of its revenue, the relationship itself may hint at little of significance to the present matter."). Additionally, an attorney's compensation is relevant to establishing bias in the insurance bad faith context. *Kagan v. State Farm Mut. Auto. Ins. Co.*, No. CV 08–04903 GAF (MANx), 2009 WL 10675116, at *4 (C.D. Cal. Nov. 12, 2009) (acknowledging that the fees an attorney receives from an insurance company to review cases is relevant to the attorney's credibility, but limiting the evidence presented to the jury to the percentage of the firm's work that the firm did with the insurance company because of the potential to prejudice and confuse the jury).

Interrogatory 13 seeks the monthly amount Defendant paid to Mr. Hansen's law firm for legal services, which demonstrates the extent of the firm's relationship with Defendant. To the extent this is a significant amount or a substantial portion of the firm's income, it would support an inference that the firm is more inclined to reach decisions in Defendant's favor. While this evidence may not be admissible at trial or may be admissible only in a different form, the standard for relevance at the discovery phase is broad and Plaintiff has satisfied her burden of showing that the evidence may make it more likely that Defendant knew Mr. Hansen exhibited bias when reviewing Defendant's claims. Moreover, Defendant offers no authority to the contrary, except one case that cautions courts not to "generously order disclosure of the private financial affairs of nonparties without careful scrutiny of the real needs of the litigant who seeks discovery." (Jnt. Stmt 24 (citing *Stony Brook I Homeowners Ass'n v. Superior Court*, 84 Cal. App. 4th 691, 698 (2000)).) The Court has considered the cautionary language in *Stony Brook*, but finds it inapplicable to Defendant's relevancy objection because in that case the requesting party sought

1 detailed information about all litigation an expert worked on over a four-year period. In contrast, here, Plaintiff's request is much more tailored to the "real needs" of her case and has only requested the total legal fees Defendant has paid to a single law firm. Accordingly, the Court OVERRULES Defendant's relevancy objection as to Interrogatory 13.

### 2. Burdensomeness

"In making a decision regarding burdensomeness, a court must balance the burden on the interrogated party against the benefit to the discovering party of having the information." *Thomas*, 715 F. Supp. 2d at 1032. "Discovery should be allowed unless the hardship is unreasonable in the light of the benefits to be secured from the discovery." *Id.* "The burden is on the responding party to justify its objections or its failure to provide complete answers to interrogatories." *Collins v. JC Penney Life Ins. Co.*, No. 02cv0674–L(LAB), 2003 WL 25945842, at *2 (S.D. Cal. May 6, 2003). "Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production." *Id.* (quoting *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684 (D. Kan. 1991)).

As a threshold matter, Defendant's objections based on burdensomeness are insufficient as they fail to adequately establish the burden of responding to the interrogatories with any specificity. "For a burdensomeness argument to be sufficiently specific to prevail, it must be based on declarations or other evidence." *Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1229 (C.D. Cal. 2010); *Thomas*, 715 F. Supp. 2d at 1032 ("[A]n objecting party must specifically establish the nature of any alleged burden, usually by affidavit or other reliable evidence."). Here, Defendant has not offered any declarations or other evidence substantiating its burdensome objections. Accordingly, on this basis alone, the Court may overrule Defendant's objections to all three interrogatories. *McEwan v. OSP Grp.*, L.P., No. 14-cv-2823-BEN (WVG), 2016 WL 1241530, at *5 (S.D. Cal. Mar. 30, 2016) (rejecting the defendant's contention that responding to interrogatories was overly burdensome where the declarant supporting the defendant's response "fail[ed] to lay a foundation for his opinion" and "d[id] not represent that he has a technical background or any particular knowledge of [the defendant's] information technology capabilities").

Notwithstanding Defendant's failure to substantiate its burden of responding to Plaintiff's interrogatories, the Court still evaluates Defendant's claims of undue burden to the extent possible based on the representations in the Joint Statement.

        *i.      Interrogatories 11 and 12*[1]

Defendant provides a limited and superficial description of the burden of identifying the information sought by Interrogatories 11 and 12. Specifically, according to Defendant, it "would require a burdensome review of the facts and circumstances of each particular claim far beyond the scope of any discovery obligation" and "no click of a computer could reveal the information sought by Tucker." (Jnt. Stmt 16–17.) While these are more than just bare assertions of an undue burden, the Court has no basis by which to balance Defendant's burden against the benefit to Plaintiff and determine whether the evidence is proportional to the needs of the case. For example, approximately how many claims could potentially be responsive? How long would it take to review a claim file to identify the information sought by Plaintiff? How much would this review cost? What are the specific obstacles to obtaining the potentially responsive claims from Mr. Hansen's firm and manually reviewing those claims? Without any facts substantiating how much time and effort would be required to obtain the responses to the interrogatories, Defendant has failed to satisfy its burden of setting forth its objections with specificity. Fed. R. Civ. P. 33(b)(4); *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 445 (N.D. Cal. 2015) (holding the defendant failed to "demonstrate[] that its burden outweighs the likely benefit" of the discovery request where the defendant's declarant "d[id] not explain how much time he realistically believes it will take him to acquire the rest of the information Plaintiffs requested").

Moreover, in both cases on which Defendant relies in support of its objection, the objecting party provided a declaration substantiating the extent of the burden before the Court found the interrogatories imposed an undue burden on the responding party. For example, in *Dobro v.*

---

[1] The Court notes that while Defendant's initial responses to all three interrogatories were identical, including an objection that each interrogatory imposed an undue burden, Defendant does not separately argue in the Joint Statement that Interrogatory 13 is unduly burdensome. Accordingly, because Defendant has not even attempted to substantiate or explain the burden of responding to Interrogatory 13, the Court only addresses Defendant's objections to Interrogatories 11 and 12. *See Collins*, 2003 WL 25945842, at *2 ("Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production.").

*Allstate*, the defendant offered the declaration of a staff claims manager who was familiar with the search capabilities and limitations of the defendant's electronic records and was responsible for performing searches of such electronic records for property claims. 2016 WL 4595149, at *6. The declarant stated there were over 10,000 claims responsive to the initial search request and that it would take at least three minutes per claim to narrow the claims based on certain limiting criteria. *Id.* Similarly, in *Collins v. JC Penney Life Ins. Co.*, the defendant offered a declaration from its Vice President of Claims with the parties' joint statement, estimating it would take over 2,600 hours and cost over $78,000 to obtain the information sought by the plaintiff. 2003 WL 25945842, at *6 n.7. Here, Defendant has offered no such facts to substantiate its burden of responding to Interrogatories 11 and 12.

Despite Defendant's failure to substantiate the burden of responding to Interrogatories 11 and 12, the Court recognizes that the burden may be significant enough such that responding to the interrogatories is unreasonable. At the same time, the Court also acknowledges that Plaintiff is entitled to conduct discovery to support its case. Accordingly, the Court DEFERS ruling on these objections to Interrogatories 11 and 12, until Defendant supplements the record with evidence demonstrating its burden of responding to Interrogatories 11 and 12. Specifically, by no later than December 14, 2018, Defendant SHALL file on the docket, a statement with supporting declarations or other evidence articulating with *specificity* the burden and costs of responding to Interrogatories 11 and 12, including an estimate of the potentially responsive claims it would have to manually search and the estimated time required to search those claims. The statement shall also articulate the search capabilities of its record keeping system to determine if there is any alternative means of identifying the requested information or further narrowing the claims responsive to Interrogatories 11 and 12, such as claims for theft or damage caused by fire or water or other types of property loss, along with the costs and burden of doing so.

The Court notes that the "fact that a responding party maintains records in different locations, utilizes a filing system that does not directly correspond to the subjects set forth in [Plaintiff's interrogatories], or that responsive documents might be voluminous does not suffice to sustain a claim of undue burden." *Thomas*, 715 F. Supp. 2d at 1033. However, to the extent Defendant

maintains that the information sought by Interrogatories 11 and 12 is not readily ascertainable from its own records, Defendant shall further articulate with specificity the burden and costs of obtaining the potentially responsive claims from Mr. Hansen's firm and manually searching those claims for the requested information.

**3. Overbroad, Vague, and Ambiguous**

"A party opposing discovery on the basis that the request is overbroad bears the burden of showing why discovery should be denied." *Thomas*, 715 F. Supp. 2d at 1032. In responding to interrogatories, the "responding party shall use common sense and reason." *Nguyen v. Biter*, No. 1:11–cv–00809–AWI–SKO, 2015 WL 366935, at *3 (E.D. Cal. Jan. 27, 2015).

*i.     Interrogatories 11 and 12*

Defendant contends the limitation in Interrogatories 11 and 12 to only claims that Defendant has retained Mr. Hansen to "provide assistance . . .with," is vague and ambiguous, and the term "property loss" is overbroad. (Jnt. Stmt 15.) Defendant further asserts it is unclear to what level of involvement Mr. Hansen must have before it rises to the level of "provid[ing] assistance" with a claim and that there are many different types of claims that would be considered a "property loss." (*Id.*)

The parties are expected to use common sense in responding to discovery requests. "Assist" means "to give support or aid."[2] Thus, the scope of these interrogatories is clear: to the extent Mr. Hansen has provided support to Defendant in handling a claim, it would be included within the scope of these interrogatories. Additionally, while the term "property loss" encompasses claims that are different from the specific type of property loss at issue in this case, such claims may still be relevant to the reasonableness of Defendant's reliance on Mr. Hansen's advice because the information sought demonstrates the nature and extent of the relationship between Mr. Hansen and Defendant. Accordingly, the Court OVERRULES these objections to Interrogatories 11 and 12.

---

[2] Merriam-Webster, Assist, https://www.merriam-webster.com/dictionary/assist, (last visited Nov. 9, 2018).

### ii. *Interrogatory 13*

In less than a half-page of the parties' Joint Statement, and without citing any authority, Defendant asserts Interrogatory 13 is overbroad because it requests information regarding Defendant's payments to Mr. Hansen's firm regardless of the nature of payments, whether Mr. Hansen was involved, or the nature of the claim or engagement. (Jnt. Stmt 24.) However, the payments Mr. Hansen's firm receives from Defendant—regardless of the nature of the payments——may prejudice Mr. Hansen's judgement in favor of Defendant if those payments are significant. As the responding party bears the burden of demonstrating this request is overbroad, and Defendant has not cited a single federal or state court case finding a similar request to be overbroad, the Court OVERRULES this objection to Interrogatory 13.

### 4. Attorney-Client Privilege

In a federal action such as this based on diversity of citizenship jurisdiction, state law governs privilege claims. Fed. R. Evid. 501; *Star Editorial, Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 7 F.3d 856, 859 (9th Cir. 1993). The attorney-client privilege attaches to "confidential communication between client and lawyer" during the course of the attorney-client relationship. Cal. Evid. Code § 952; *Moeller v. Superior Court*, 16 Cal. 4th 1124, 1130 (1997) ("Once this relationship is established, the attorney-client privilege attaches to communications made in confidence during the course of the relationship."). "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 54 Cal. 3d 765, 779 (1991) (quoting Cal. Evid. Code § 952). "However, the attorney-client privilege only protects disclosure of *communications* between the attorney and the client; it does not protect disclosure of underlying facts which may be referenced within a qualifying communication" or "independent facts related to a communication; that a communication took place, and the time, date and participants in the communication." *State Farm Fire & Cas. Co. v. Superior Court*, 54 Cal. App. 4th 625, 639–40 (1997) (emphasis in original). "[D]ocuments prepared independently by a party, including witness statements, do not become privileged communications or work

13

product merely because they are turned over to counsel." *Wellpoint Health Networks, Inc. v. Superior Court*, 59 Cal. App. 4th 110, 119 (1997).

        *i.*     *Interrogatories 11 and 12*[3]

Interrogatories 11 and 12 only seek a claim number, the date of a loss, and the date Defendant retained Mr. Hansen for certain claims. These are "independent facts" that may be referenced in communications between Mr. Hansen and Defendant, but that does not make these facts privileged. *State Farm Fire & Cas. Co.*, 54 Cal. App. 4th at 639–40. Defendant mischaracterizes the information Plaintiff seeks by asserting the interrogatories require Defendant to disclose "the content of the advice from and communications with Hansen in connection with other claims." (Jnt. Stmt 18.) However, Interrogatories 11 and 12 make no such request, and accordingly Defendant's objections based on the attorney-client privilege are OVERRULED.

**5. Privacy Concerns Under California Law**

California Insurance Code section 791.13 provides: "An insurance institution, agent, or insurance-support organization shall not disclose any personal or privileged information about an individual collected or received in connection with an insurance transaction" unless an exception applies. The Insurance Code defines the terms "personal information" and "privileged information," which must include an individual's personally identifiable information.[4]

        *i.*     *Interrogatories 11 and 12*

Here, Interrogatories 11 and 12 only request the claim number, the date of loss, and the date that Mr. Hanson was retained to assist Defendant in handling certain insurance claims.

---

[3] The Court notes that while Defendant's initial responses to all three interrogatories were identical, including an objection that each interrogatory infringed on the attorney-client privilege, and Defendant mentions the attorney-client privilege in one of the headings in the parties' Joint Statement, Defendant does not separately argue in the Joint Statement that Interrogatory 13 requires the disclosure of any privileged communications. Accordingly, because Defendant has not even attempted to argue how responding to Interrogatory 13 would infringe on the attorney-client privilege, the Court only addresses Defendant's attorney-client privilege objections to Interrogatories 11 and 12. *See Collins*, 2003 WL 25945842, at *2.

[4] The complete definitions of the terms are as follows: "Personal information" means "any individually identifiable information gathered in connection with an insurance transaction from which judgments can be made about an individual's character, habits, avocations, finances, occupation, general reputation, credit, health, or any other personal characteristics." Cal. Ins. Code § 791.02(s). "Privileged information" means "any individually identifiable information that both: (1) Relates to a claim for insurance benefits or a civil or criminal proceeding involving an individual, [and] (2) Is collected in connection with or in reasonable anticipation of a claim for insurance benefits or civil or criminal proceeding involving an individual." Cal. Ins. Code § 791.02(v).

Responding to the interrogatories does not require the disclosure of the identity of any policyholder or the disclosure of any communications or writings between Defendant and Mr. Hansen. Thus, no "individually identifiable," "personal," or "privileged" information as statutorily defined is requested. Moreover, the only authorities Defendant cites in the Joint Statement are in the context of a plaintiff seeking consent from non-parties to disclose confidential communications. (Jnt. Stmt 19 (citing *Mead Reins. Co. v. Superior Court*, 186 Cal. App. 3d 313, 317 (1986) and *Colonial Life & Acc. Ins. Co. v. Superior Court*, 31 Cal. 3d 785, 792 (1982)). These authorities are inapplicable to this dispute because Interrogatories 11 and 12 do not seek the disclosure of any communications. Therefore, Defendant's objections to Interrogatories 11 and 12 based on California Insurance Code section 791.13, are OVERRULED.

    *ii. Interrogatory 13*

  Defendant does not contend California Insurance Code section 791.13 protects Defendant from responding to Interrogatory 13. Instead, Defendant offers two cases in support of its privacy objection to Interrogatory 13, but neither case establishes that there is a California law protecting the information sought by Interrogatory 13. Defendant cites *Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal. App. 4th 579, which Defendant contends "recogniz[es] the right of financial privacy as applied to corporations," and *Coito v. Superior Court*, 54 Cal. 4th 480 (2012), which Defendant contends "recogniz[es] privacy concerns of nonparty witnesses." (Jnt. Stmt 25.) Even if these cases stood for the propositions Defendant contends they do, the cases do not establish that the amount of Defendant's payment to Mr. Hansen's firm is privileged. At best, *Hecht* establishes that constitutional rights protecting an individual's right to privacy should not ignore corporations' financial privacy. Similarly, *Coito* recognizes that certain privacy rights may apply to nonparty witnesses. However, neither case establishes a specific right that protects anyone, corporation or natural person, from disclosing any specific information. As Defendant bears the burden of setting forth the law that protects the response to Interrogatory 13, and Defendant has failed to do so, the Court OVERRULES Defendant's privacy objections to Interrogatory 13.

### III. CONCLUSION

Accordingly, IT IS HEREBY ORDERED THAT:

1. The Court DEFERS ruling on Plaintiff's motion to compel further responses to Interrogatories 11 and 12;

2. By no later than December 14, 2018, Defendant SHALL supplement the record with a statement supported by competent testimony or other evidence setting forth with specificity the costs and burden of responding to Interrogatories 11 and 12, including any alternative means of obtaining the requested information and the costs and burden of obtaining the requested information from Mr. Hansen's firm to the extent the information is not readily ascertainable from Defendant's own records. The statement also shall articulate the processes available to Defendant for searching its records for the requested information, including the search criteria that may be used to narrow the scope of claims that may be responsive to Interrogatories 11 and 12 and the costs and burden of doing so;

3. The parties are encouraged to meet and confer regarding Defendant's responses to Interrogatories 11 and 12 consistent with foregoing, and to the extent the parties can reach an agreement, Defendant may file a notice of withdrawal of its motion to compel instead of the statement ordered above; and

4. Plaintiff's motion to compel further responses to Interrogatory 13 is GRANTED.

IT IS SO ORDERED.

Dated: **November 19, 2018**             /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE

16